EXHIBIT 1

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

## 1. PARTIES

This Settlement Agreement and Mutual Release (the "Agreement") is entered into by and between Henry LoConti and Global Pay LLC (collectively, the "Global Parties"), on the one hand, and Thomas W. McNamara, as the Court-appointed Receiver in *USA v. Internet Transaction Services, Inc., et al.*, U.S. District Court (C.D. Cal.), Case No. 2:21-cv-6582-JFW (KSx) (the "Receiver"), on the other hand. For purposes of this Agreement, Global Parties and the Receiver are each referred to individually as a "Party" and collectively as the "Parties."

## 2. RECITALS

2.1. On August 13, 2021, the United States of America filed a lawsuit against Internet Transaction Services, Inc., among others, in the United States District Court for the Central District of California, initiating the lawsuit styled as *USA v. Internet Transaction Services, Inc., et al.*, U.S. District Court (C.D. Cal.), Case No. 2:21-cv-6582-JFW (KSx) (the "Action").

2.2. On August 20, 2021, Thomas W. McNamara was initially appointed as receiver over the Receivership Entities as those entities are defined in the Temporary Restraining Order with Asset Freeze, Appointment of Temporary Receiver, and Other Equitable Relief dated the same date.

2.3. On September 2, 2021, the Court issued a Preliminary Injunction with Asset Freeze, Receiver, and Other Equitable Relief whereby it reaffirmed the Receiver's appointment and tasked him with, among other things, identifying, preserving, and recovering assets of the receivership estate.

2.4. On January 5, 2022, the Court issued a Final Order of Permanent Injunction as to the Corporate and Shell Entity Defendants, and confirmed the Receiver's authority over Receivership Entities, as those terms are defined in the Order.

2.5. Certain disputes and controversies have arisen among the Parties with regard to Global Parties' receipt of certain monies for services provided to the Receivership Entities in connection with consumer transactions. The Parties' respective claims, allegations, assertions, and defenses, and each of them, with respect to these matters shall constitute the "Dispute."

2.6. Without any admission of liability by any of the Parties and without conceding the respective positions of any of the Parties, the Parties desire to settle and dispose of, fully and completely, the Dispute.

2.7. Therefore, in consideration of the mutual covenants set forth herein, and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree to the settlement of the Dispute on the terms and conditions below, all of which shall be considered material to this Agreement.

3.  **EFFECTIVE DATE**

    3.1. The "Effective Date" of this Agreement is the date on which the last Party signs this Agreement.

4.  **SETTLEMENT CONTINGENCY**

    4.1. Although this Agreement follows a good faith, arm's length pre-litigation negotiation, this Agreement is not binding on the Parties unless and until the Court presiding over the Action enters an order approving the Agreement.

    4.2. Promptly following the Effective Date, the Parties shall file a joint motion in the Action seeking the District Court's approval of this Agreement. The Parties shall take all reasonably necessary actions that may become necessary to secure a prompt and favorable determination by the Court.

    4.3. In the event that the Court does not approve of this Agreement, the Parties shall meet and confer and make all reasonably necessary changes to the Agreement, provided that the changes remain consistent with the Settlement Amount and Related Terms identified in Section 5, and then promptly reapply for approval.

        4.3.1. The Parties' obligations under Section 4.3 shall continue until the Parties reasonably determine that material changes to the Settlement Amount and Related Terms identified in Section 5 are required in order to secure court approval of the Agreement. In such an event, the Parties shall have the option to continue settlement negotiations or declare an impasse, in which event this Agreement shall become null and void, and the Receiver shall direct the return of all amounts paid pursuant to Section 5 below.

5.  **SETTLEMENT AMOUNT AND RELATED TERMS**

    5.1. In consideration for the promises made in this Agreement and in full payment of any monies due, Global Parties shall pay to the Receiver One Hundred Seven Thousand Five Hundred Dollars ($107,500.00) (the "Settlement Amount") in United States currency on or before November 3, 2022.

    5.2. Within seven (7) days of the Effective Date, and as a condition to the receipt of any monies described in this Agreement, the Receiver shall provide Global Parties with a valid W-9.

    5.3. The settlement payment described in paragraph 5.1 above must be made by wire or cashier's check payable to "Intertrans.com Receivership", and delivered via overnight mail to McNamara Smith LLP, Attn: Jill Jacobs, 655 West Broadway, Suite 900, San Diego, CA 92101.

6.  **RELEASES**

    6.1. In consideration of the Agreement and terms contained herein, and contingent upon the Court's approval of this Agreement and Global Parties' satisfaction of all of their

obligations under this Agreement, the Parties mutually agree to release and forever discharge each other, and their parent, subsidiary companies, and each of their respective current and former officers, directors, agents, spouses, shareholders, partners, insurers, heirs, relatives, representatives, employees, successors, assigns, and attorneys (collectively, "the Released Parties") from all acts, occurrences, costs, proceedings, obligations, claims, debts, demands, and liabilities, and any and all other claims of every kind, nature, and description whatsoever, both in law and equity, whether known or unknown, whether suspected or unsuspected, whether accrued or un-accrued, whether now or heretofore existing, whether premised on contract, statute, tort or other theory of recovery, for any compensatory, punitive, penalty, statutory, contract or tort damages, with respect to the Dispute, including without limitation, claims that were or could have been asserted in, the Dispute.

6.2. Except as expressly provided herein, all rights under Section 1542 of the California Civil Code are expressly waived by the Parties, who have read Section 1542 of the California Civil Code, and understand that it provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

6.3. The Parties expressly waive and relinquish every right or benefit they may have under Section 1542 of the California Civil Code arising out of or related to the facts, transactions, or occurrences alleged in the Dispute to the fullest extent possible. In connection with this waiver, the Parties acknowledge that they are aware that facts may hereafter be discovered in addition to or different from those now known or believed to be true with respect to this release, but that it is the intention of the Parties to hereby fully, finally and forever release and discharge each other, and thus this release shall remain in effect as a full and complete release notwithstanding the later discovery or existence of any such additional or different facts.

## 7. REPRESENTATIONS AND WARRANTIES

The Parties to this Agreement represent, warrant, and agree as follows:

7.1. Global Parties represent and warrant that they have disclosed their available assets to the Receiver and have not intentionally transferred any such assets to others in an effort to artificially reduce their assets available for settlement.

7.2. Each Party has received independent legal advice from their attorney with respect to the rights, obligations, and advisability of entering into the settlement pursuant to this Agreement and with respect to the rights, obligations, and advisability of executing this Agreement. Each Party hereto declares that it has fully reviewed this Agreement prior to signing it, knows and understands its contents, and that it has executed this Agreement voluntarily.

7.3. Each Party to this Agreement has made such investigation of the facts pertaining to this settlement and this Agreement and of all the matters pertaining thereto as it deems necessary.

7.4. Each person executing this Agreement on behalf of the respective Parties warrants that he, she, or it is empowered to do so and thereby binds his, her, or its respective Party.

7.5. Each person executing this Agreement on behalf of the respective Parties warrants that he, she, or it has not heretofore assigned, transferred, or granted, or purported to assign, transfer, or grant, any of the claims, demands, and cause or causes of action disposed of herein.

7.6. Each Party acknowledges that no other person, nor any attorney of any other person, has made any promise, representation or warranty whatsoever, expressed or implied, not contained herein, concerning the subject matter hereof, to induce the Parties to execute or authorize the execution of this Agreement, and acknowledges that it has not executed or authorized the execution of this Agreement in reliance upon any such promise, representation or warranty not contained herein. No Party relies upon any statement of any other Party in executing this Agreement, except as expressly stated herein.

7.7. This Agreement effects the settlement of claims which are denied and contested, and nothing contained herein shall be construed as an admission by any Party hereto of any liability of any kind to any other party. Each of the Parties hereto denies any liability in connection with any claim and intends merely to avoid litigation and buy its peace. This Agreement shall not be admissible as evidence in any proceeding other than a proceeding to enforce an obligation of a Party hereto.

## 8. MISCELLANEOUS

8.1. This Agreement shall be deemed to have been executed and delivered within the State of California, and the rights and obligations of the Parties hereto shall be construed and enforced in accordance with and governed by the laws of the State of California.

8.2. This Agreement is the complete and entire agreement and mutual release by and among the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous oral and written agreement(s), representation(s), negotiation(s), and/or discussion(s). This Agreement shall not be modified by any Party by any oral representation(s) made before or after the Effective Date of this Agreement. This Agreement may be amended or modified only by an agreement in writing signed by the Parties. Any amendment(s) or modification(s) must be in writing and signed by the party or a duly authorized representative of the Party against whom such amendment(s) or modification(s) is/are sought to be enforced.

8.3. This Agreement is binding upon and shall inure to the benefit of the Parties hereto, their respective officers, directors, agents, parents, subsidiaries, shareholders, partners, insurers, heirs, relatives, representatives, affiliates, employees, successors, assigns, and attorneys.

8.4. Each Party has cooperated in the drafting and preparation of this Agreement. Hence, in any construction to be made of the Agreement, the same shall not be construed against any Party.

8.5.    The Parties agree, for their respective selves, principals, agents, representatives, employees, attorneys, successors, and assigns, that they will abide by the terms of this Agreement, which terms are meant to be contractual, and further agree that they will do such acts and prepare, execute, file, and/or deliver such documents as may reasonably be required in order to carry out the purposes and intent of this Agreement.  The Parties to this Agreement shall use their best efforts, including all efforts that may become necessary by order of the Court or otherwise, to effectuate this Agreement and its terms.

8.6.    Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall (to the full extent permitted by law) not invalidate or render unenforceable such provision in any other jurisdiction.

8.7.    Any notices required or permitted to be given pursuant to this Agreement shall be given in writing to the Parties and their respective counsel and shall be delivered via email.  The Receiver, Global Parties, and other interested parties should be notified as follows:

> Thomas W. McNamara
> Court-appointed Receiver
> tmcnamara@mcnamarallp.com
>
> And
>
> Andrew M. Greene
> McNamara Smith LLP
> agreene@mcnamarallp.com

For purposes of notifying Global Parties, the Receiver should notify the following:

> Erik L. Walter
> ewalter@dworkenlaw.com

8.8.    This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties.  Signatures may be transmitted by facsimile or electronically via PDF and will have the same force and effect as an original.

[SIGNATURE PAGE FOLLOWS]

**READ CAREFULLY BEFORE SIGNING.**

Thomas W. McNamara, not individually, but solely as Court-appointed Receiver in *USA v. Internet Transaction Services, Inc., et al.*, U.S. District Court (C.D. Cal.), Case No. 2:21-cv-6582-JFW (KSx)

Dated: ~~October ___, 2022~~
November 7, 2022

By: _____
Thomas W. McNamara

**Henry LoConti**

Dated: ~~October ___, 2022~~
November 4, 2022

By: _Henry J. LoConti, Jr._
Henry LoConti

**Global Pay LLC**

Dated: ~~October ___, 2022~~
November 4, 2022

By: _Henry J. LoConti, Jr._
Henry LoConti, ~~President~~ / Managing Member

**APPROVED AS TO FORM:**

**McNAMARA SMITH LLP**

Dated: ~~October ___, 2022~~
November 7, 2022

By: _____
Andrew M. Greene
Attorneys for Court-appointed Receiver,
Thomas W. McNamara

**DWORKEN & BERNSTEIN, CO., LPA**

Dated: ~~October~~ November 7, 2022

By: _____
Erik L. Walter
Attorneys for Henry LoConti and Global Pay LLC

6

EXHIBIT 1
Page 7